IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,863

In the Matter of LYLE LOUIS ODO,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed July 15, 2016. One-year suspension.

*Kimberly L. Knoll*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*Thomas A. Hamill*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Overland Park, argued the cause, and *Lyle Louis Odo*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Lyle Louis Odo, of Platte City, Missouri, an attorney admitted to the practice of law in Kansas in 2007. Respondent was admitted to the practice of law in Missouri in 1975.

On August 10, 2015, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on September 2, 2015. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on November 4, 2015, where the respondent was present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.7(a)(2) (2015 Kan. Ct. R. Annot. 519) (conflict of interest); 1.8(a) (2015 Kan. Ct. R. Annot. 530) (conflict of interest); 1.8(e) (2015 Kan. Ct. R. Annot. 530) (providing financial assistance to client);

1

1.9(a) (2015 Kan. Ct. R. Annot. 539) (duties to former clients); 1.15(d) (2015 Kan. Ct. R. Annot. 556) (preserving client funds); and 8.4(d) (2015 Kan. Ct. R. Annot. 672) (engaging in conduct prejudicial to the administration of justice).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"8.     On June 24, 2011, C.M. and L.F. filed a complaint against the respondent with the disciplinary administrator's office. C.M. and L.F. also filed a complaint with the Missouri Office of Disciplinary Counsel.

"9.     In August 2013, a Missouri disciplinary hearing panel conducted a hearing. In December 2013, the disciplinary hearing panel issued its written decision. The hearing panel made the following findings of fact:

'10.     On November 6, 2009, [C.M.] was a passenger in a vehicle driven by [L.F.], which was involved in a collision with a vehicle driven by an employee of Alan Cummings. The accident occurred in Atchison County, Kansas.

'11.     As a result of the accident, [C.M.] sustained a fractured hip and was life-flighted to a hospital where he was hospitalized for six days.

'12.     On December 2, 2009, [L.F.] and [C.M.] both executed a written attorney-client agreement with Respondent for legal representation of them regarding their respective injury claims arising out of the motor vehicle accident.

2

'13.     Respondent's law firm is located in Missouri. [C.M.] and [L.F.] met with Respondent several times at Respondent's Missouri law office. Since there was no lawsuit filed by Respondent with respect to the personal injury claim, virtually all work performed by Respondent relative to that claim occurred in Missouri.  Other legal work performed by Respondent for [C.M.] involved legal proceedings before a Missouri tribunal, e.g. Circuit Court of Platte County, Missouri or the City of Tracy, Missouri Municipal Court.

. . . .

'15.     [L.F.]'s personal injury claim was settled by Respondent on January 14, 2011.

'16.     [C.M.] terminated Respondent's services in the personal injury claim on May 10, 2011, and retained Roger D. Fincher.

'17.     [C.M.]'s personal injury claim was settled in late 2011.

'Findings of Fact Relating to Count I:
Prohibited Transactions [Rule 4-1.8(a)]

'18.     Beginning about February 2010, [C.M.] was unable to work and was experiencing financial distress. He investigated the possibility of obtaining loans as an advance against his anticipated personal injury settlement, and inquired of Respondent as to this possibility.

'19.     Respondent advised [C.M.] that he could arrange for him to receive loans on better terms than the sources he had investigated.

3

'20.     Respondent recommended [C.M.] borrow funds from Kristen Nicole Properties, Inc. (KNP).

'21.     KNP is a closed corporation which Respondent incorporated in 1994. He is President and registered agent of the corporation, and the only officer, employee, or representative it has ever had. KNP has the same address, telephone number, and email address as Respondent's law office.

'22.     At the time of its incorporation Respondent was the sole owner of KNP, but in 2005 Respondent transferred all the shares of KNP to his daughter, Kristen Nicole Odo, who is now the sole shareholder and beneficiary.

'23.     At all times in question Respondent was the registered agent of KNP, as well as its sole director and officer, and was the only person through whom [C.M.] or anyone else deals with KNP.

'24.     Respondent testified that the primary purpose of KNP is to invest in and manage real estate properties.

'25.     Respondent testified that no one receives any salaries, dividends, or income from KNP. The sole benefit of its economic activities is the appreciation of its value. Respondent testified that he transferred ownership of KNP to Kristen Nicole Odo as an estate planning action, so that she would benefit from the wealth it created upon his death or cessation of business. However, Respondent is still the only person who operates or represents KNP.

'26.     Although Respondent is not the technical owner of KNP, he still derives benefit from profits earned by the company, as according to his own testimony such profits enhance the value of his estate, and thus Respondent has an ownership, possessory, security, or other

4

pecuniary interest in transactions with KNP for purposes of Rule 4-1.8(a).

'27.    The acts of KNP in loaning money to Respondent's client are the acts of Respondent himself since Respondent was the only officer, director and agent of the lender and controlled the checking account used to consummate the loans and personally signed each loan check. Respondent controlled each aspect of the transactions without the independent assistance of any other person.  Respondent's daughter Kristen Nicole Odo had no knowledge of the loan transactions between KNP and [C.M.].

'28.    During the period from February 2010 to May 2011, Respondent arranged sixteen separate loan transactions between [C.M.] and KNP. [L.F.] signed twelve of the loan documents as a guarantor or co-signer.

'29.    Respondent served as counsel for KNP in the loan transactions, and also had an active client-attorney relationship with [C.M.] and [L.F.] at all times during the loan transactions. Respondent testified that he went through the loan documents with [C.M.] and [L.F.], answered their questions, and generally advised them as their attorney as to the loan transactions.

'30.    Respondent did not advise [C.M.] and/or [L.F.] in writing of the desirability of seeking independent legal counsel on the transaction, as required by Rule 4-1.8(a)(1).

'31.    Respondent did not fully disclose and transmit the transaction and terms on to the [*sic*] [C.M.] and [L.F.] in writing in a manner that can be reasonably understood by the client, as required by Rule 4-1.8(a)(2).

5

'32.    [C.M.] and [L.F.] did not give informed consent, in a writing signed by them, to the essential terms of the transaction and Respondent's role in the transaction, including whether Respondent was representing them in the transaction, as required by Rule 4-1.8(a)(3).

'33.    These business transactions were secured loan transactions, documented in each case by a "Note, Disclosure and Security Agreement" (Exhibit 4) jointly executed by [C.M.] as the borrower and [L.F.] as guarantor or co-signer. Under these loan agreements, Kristen Nicole Properties, Inc. ("KNP") was identified as the lender.

'34.    Each of the sixteen loan agreements contained the following provision:  "To secure the obligations of this Loan Agreement, I give you a security interest in the Property described below. Sufficient portion of the proceeds of an injury claim against Alan Cummings which occurred November 6, 2009 to satisfy this note."

'35.    Each of the sixteen loan transactions was secured by a lien on the proceeds of [C.M.]'s personal injury settlement, in the matter in which Respondent represented [C.M.].

'36.    Respondent, representing KNP, charged [C.M.] a transaction fee of $75 for each loan transaction, amounting to $1,200 for the sixteen transactions.

'37.    The interest rate for the loans was 180% for the first month, and 38.8% per annum, a rate the Panel finds excessive, burdensome, and possibly illegal. [Footnote:  The hearing panel in the instant case concurs with the Missouri disciplinary hearing panel that in addition to the rule violations, the hearing panel also concludes that the interest rate charged by the respondent is excessive and burdensome.

6

Further, if the transaction had occurred in Kansas, it would be illegal. See K.S.A. 16-207.]

'38. Respondent advised and required [L.F.] to co-sign for the loans although she acquired no interest in the loan proceeds, which were not terms fair and reasonable to [L.F.].

'Findings of Fact Relating to Count II:
Financial Assistance to a Client [Rule 4-1-8(e)]

'39. From Respondent's own funds, during the course of the representation, Respondent paid various bills for medical treatment received by [C.M.]. Respondent twice paid $500 each for [C.M.]'s epidural treatments to relieve his pain. Respondent admits that such payments were for actual medical treatment received by [C.M.].

'40. Respondent also paid $4,079 for an MRI on [C.M.]'s behalf. Respondent's amended answer characterizes this payment as a payment of "medical evaluation" rather than for "medical treatment," but in his testimony Respondent did indeed admit that the $4,079 payment was "diagnostic" for his client's "medical treatment," and also included pharmaceutical analgesic.

'41. On these occasions Respondent advanced payments for medical treatments to his client.

'42. Respondent has expressed his regret for this violation of the Rule, and testified that his motivation was compassion for his client who was in pain and unable to pay medical expenses.

'Findings of Fact Relating to Count III:  Representation of a Client Involving a Concurrent Conflict of Interest [Rule 4-1.7(a)(2)]

7

'43. During the relevant period at issue, Respondent simultaneously served as the lawyer for [C.M.] and [L.F.]; the lawyer for KNP; the sole officer and director of KNP; and a father who desired to leave an inheritance to his daughter and the namesake of KNP.

'44. Respondent's own actions often failed to distinguish between his different roles. In March 2011, Respondent sent to [C.M.] on law firm letterhead (Exhibit 10) an accounting of the loan balances with accrued interest while in April 2011, Respondent send [*sic*] the copies of the loan documents on KNP letterhead (Exhibit 3) as president of KNP.

'45. Respondent simultaneously represented KNP as creditor and [L.F.] and [C.M.] as borrowers in connection with the administration of the loans.

'46. There was a significant risk that Respondent's representation of [C.M.] and [L.F.] would be materially limited by Respondent's personal interests as their creditor through his absolute control of the finances of KNP. Likewise, there was a significant risk that Respondent's representation of KNP would be materially limited by Respondent's responsibilities to [C.M.] and [L.F.].

'47. [C.M.] testified that he became concerned that Respondent's interest in loaning him money was deterring Respondent from filing a lawsuit on his behalf or proceeding with settlement of the matter.

'48. Respondent simultaneously represented KNP as creditor and [L.F.] and [C.M.] as borrowers in connection with the administration of the loans.

'49. There was a significant risk that Respondent's representation of [C.M.] and [L.F.] would be materially limited by the

8

Respondent's personal interests and divided loyalty as their creditor through his pecuniary interest in and representation of KNP.

'50.    While Respondent did not delay handling [C.M.]'s case for an amount of time that violated Rule 4-1.3 regarding diligence, the regular pattern of brokering loans from KNP to [C.M.] compromised Respondent's full loyalties were [*sic*] with his client.

'Findings of Fact Relating to Count IV:
Disclosure of Client Information [Rule 4-1.6(a)]

'51.    On May 20, 2011 Respondent filed a civil lawsuit in the Circuit Court of Platte County, Missouri against [C.M.]. The case was captioned as Lyle Odo P.C. v. [C.M.], Case No. 11AECV01722 (the "Odo v. [C.M.] Lawsuit").

'52.    The Petition in the Odo v. [C.M.] Lawsuit was prepared, signed and filed by Respondent. Respondent did not seek to file the Petition under seal.

'53.    Respondent attached as exhibits to the petition documents regarding his representation of [C.M.] and [L.F.], including detailed activity logs showing everything he did on their behalf.

'54.    [C.M.] appeared by counsel in the action, and did not file a motion to seal the documents.

'Findings of Fact Relating to Count V:
Representation Adverse to a Former Client [Rule 4-1.9(a)]
(Febbo Matter)

'55.    [C.M.]'s injury claim was settled in the latter half of 2011. In connection with the settlement, [C.M.], through his new

9

counsel, filed an action to apportion the settlement proceeds between disputed liens and [C.M.]'s share of recovery. The action was filed in the District Court of Atchison County, Kansas on October 24, 2011, captioned as [*C.M.*] *v. Cummings et al.,* Case No. 2011CV123.

'56.     Respondent appeared in the Atchison County case, adversely to [C.M.], on his own behalf, relating to his attorney fees and expenses, and also on behalf of two clients who asserted claims against [C.M.]—KNP Properties, and Dr. Theresa Febbo.

'57.     During the course of his representation on the personal injury claim, Respondent referred [C.M.] to Dr. Theresa Febbo, a chiropractor, for treatment of pain.

'58.     Dr. Febbo treated [C.M.] for pain, and also provided a chiropractic report for use in the personal injury case.

'59.     In February 2012, Respondent contacted Attorney Hudnall and advised him that Dr. Febbo was a "long time client" who needed to file a collection case, which Respondent could not do because of a conflict.

'60.     Respondent prepared the lawsuit petition on behalf of Dr. Febbo against [C.M.]. Respondent's legal assistant notarized Dr. Febbo's signature on the lawsuit petition. Respondent paid the filing fee for the lawsuit and arranged to have it filed at the Courthouse.

'61.     *Febbo v.* [*C.M.*] was docketed as No. 12AE-CU00155 in the Circuit Court for Platte County, Missouri.

'62.     William Hudnall was counsel of record for Dr. Febbo in *Febbo v.* [*C.M.*]. However, Respondent appeared on behalf of Dr. Febbo on two occasions:

a.      On February 16, 2012, Respondent appeared in place of Mr. Hudnall at a hearing on the matter.

b.      On April 5, 2012, Respondent appeared in place of Mr. Hudnall at a hearing on the matter.

'63.      Mr. Hudnall kept Respondent informed about the progress of the Febbo case, although he testified Respondent told him he had a conflict.

'64.      The subject matter of *Febbo v.* [*C.M.*] was substantially related to the subject matter of the personal injury claim in which Respondent represented [C.M.], as the injuries for which Febbo was to treat [C.M.] arose out of the same accident as the personal injury claim, and Febbo was expected to supply a report for use in the personal injury claim.

'65.      For the same reasons, the subject matter of the Febbo claim in [*C.M.*] *v. Cummings* was substantially related to the subject matter of the personal injury claim in which Respondent treated [C.M.].

'Findings of Fact Relating to Count IV:
Representation Adverse to a Former Client [Rule 4-1.9(a)]
(KNP Matter)

'66.      As previously found, [C.M.] terminated Respondent's services in the personal injury matter on May 10, 2011.

'67.      On June 1, 2011, Respondent, on his law firm letterhead, wrote a letter to [C.M.] which stated:

Enclosed you will please find a document entitled "Irrevocable Instructions To Deduct Payment From Settlement Proceeds" for your notarized signature together with a self-addressed stamped envelope for you to return same within ten (10) days from the date of this letter.

Notes #1, #2 and #3 are due and payment must be made unless you comply with this request.

If I did not receive the above document as requested, my client will initiate all steps necessary to protect its interests in collection same [*sic*].

'68.	The letter also included a Federal debt collection notice.

'69.	In the letter of June 1, 2011, Respondent clearly represented the interests of KNP, who he referred to as "my client," adversely to the interests of [C.M.].

'70.	The subject matter of the letter of June 1, 2011, collection of some of the loans Respondent had brokered between KNP and [C.M.], was substantially related to the subject matter of Respondent's representation of [C.M.] in both the loan transactions and the personal injury claim.

'71.	Respondent represented KNP as its legal counsel of record against [C.M.] in the Atchison County, Kansas proceeding captioned as [*C.M.*] *v. Cummings* to enforce KNP's purported security interest under the loan documents upon [C.M.]'s settlement proceeds.

'72.	As previously found, on May 20, 2011 Respondent filed the "Odo v. [C.M.] Lawsuit" against [C.M.] in Platte County.

12

'73.     On June 27, 2011, Respondent filed a First Amended Petition in *Odo v.* [*C.M.*], in which he added claims on behalf of KNP to the lawsuit, adversely to [C.M.].

'74.     Respondent continued to represent KNP in the matter, and filed pleadings and motions on behalf of KNP until KNP's claims were dismissed by the court.

'75.     The subject matter of the claims asserted in *Odo v.* [*C.M.*] by KNP was substantially related to the subject matter of Respondent's representation of [C.M.] in both the loan transactions and the personal injury claim.

'Findings of Fact as to Count VII:  Conduct Prejudicial
to the Administration of Justice [Rule 4-8.4 (d)]

'76.     [C.M.] fired Respondent by letter dated May 10, 2011, which Respondent likely received in the mail the next day.

'77.     On or about May 13, 2011, a member of Respondent's office staff, under his direct supervision, sent an email to Tammy Glick, the guardian ad litem of [C.M.]'s children in his custody case, requesting the name of a drug testing agency which had done a drug test on [C.M.].

'78.     The email stated that the staff person needed to refer someone to the agency. Respondent admitted in his testimony that he knew [C.M.] had undergone a drug test, but could not remember the name of the agency. He caused his staff person to contact Glick in hopes of obtaining the result of the drug test.

'79.     The testing agency refused to supply Respondent's office with the results of the drug test without a release from [C.M.].

13

'80.      Respondent admitted in his testimony that he knew [C.M.] might file a malpractice claim and/or disciplinary complaint against him, and he wanted the drug test results for evidence to defend himself.

'81.      Informant argued that Respondent violated Rule 4-8.4(d) in a variety of other ways, including:

  a.      Filing the *Odo v. [C.M.]* lawsuit against [C.M.] and revealing information relating to the representation through attachment of exhibits containing client information;

  b.      Making a demand for payment of notes to KNP, although the notes had not yet matured;

  c.      Attending a debtor examination held by Dr. Febbo's counsel (although he did not attend as counsel in the case); and

  d.      Generally attempting to annoy, harass and intimidate [C.M.] in retaliation for [C.M.]'s termination of the attorney-client relationship and [C.M.]'s initiation of a bar complaint.'

"10.      Based upon the hearing panel's decision, on September 30, 2014, the Missouri Supreme Court issued an order suspending the respondent's license to practice law indefinitely for having violated the Missouri Rules of Professional Conduct. Specifically, the Court concluded that the respondent violated Rules 1.7(a)(2), 1.8(a)(1), 1.8(a)(2), 1.8(a)(3), 1.8(e), 1.9(a), and 8.4(d).

14

"11. In its order, the court permitted the respondent to file a petition for reinstatement after a period of 1 year. At the time of the hearing on the instant formal complaint, the respondent had not yet filed a petition for reinstatement in the State of Missouri. The respondent, however, planned to file a petition for reinstatement a week or two later.

"*Conclusions of Law*

"12. Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.7, KRPC 1.8, KRPC 1.9, KRPC 1.15(d), and KRPC 8.4, as detailed below:

"KRPC 1.7

"13. The rules do not permit lawyers to represent clients with conflicting interests without taking certain steps. KRPC 1.7 provides the requirements in this regard, as follows:

'(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

. . . .

(2) there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

'(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

15

(1)     the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2)     the representation is not prohibited by law;

(3)     the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4)     each affected client gives informed consent, confirmed in writing.'

The respondent's representation of both KNP and C.M. and L.F. in the loan transactions presented a substantial risk that his representation of C.M. and L.F. would be materially limited by his responsibilities to KNP or by his personal interest. Neither C.M. nor L.F. gave written informed consent. Thus, the hearing panel concludes that the respondent violated KRPC 1.7(a)(2).

"KRPC 1.8

"14.     Generally, lawyers may not enter into business transactions with clients. See KRPC 1.8(a). In order to enter into a business transaction with a client or otherwise acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, the attorney must establish that:

'(1)     the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; and

16

'(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

'(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.'

The respondent charged C.M. extraordinary interest rates and included burdensome terms in the loan transactions. Additionally, the respondent failed to inform C.M. in writing of the desirability of seeking independent legal counsel. Finally, the respondent did not seek and obtain written informed consent from C.M. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.8(a).

"15. Attorneys may not advance funds to clients.

'(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:

(1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and

(2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.'

In this case, on multiple occasions, the respondent paid medical bills on behalf of C.M. which were not for purposes of the litigation. As such, the hearing panel concludes that the respondent violated KRPC 1.8(e). The hearing panel notes, however, that the respondent's motive for extending financial assistance to C.M. was to assist his client. The respondent's motive in this regard mitigates the misconduct.

17

"KRPC 1.9

"16.     In addition to duties owed to current clients, lawyers also owe duties to former clients. See KRPC 1.9. Specifically, KRPC 1.9(a) prohibits lawyers from representing a current client [in] the same or a substantially related matter in which a current client's interests are materially adverse to the interests of the former client without first obtaining written informed consent from the former client.

"17.     The respondent represented Dr. Febbo in an action against C.M. which was based on services performed by Dr. Febbo on referral from the respondent for treatment and evaluation related to C.M.'s personal injury case. Dr. Febbo's claims were the same or substantially related to the subject matter of the respondent's representation of C.M. Therefore, the hearing panel concludes that the respondent violated KRPC 1.9(a).

"[KRPC 1.15(d)]

"18.     Lawyers must not commingle client funds with funds belonging to the lawyer or the lawyer's firm. KRPC 1.15(d). The respondent produced his trust account records and admitted to commingling clients' funds with his funds, by using this trust account as an operating account. As such, the hearing panel concludes that the respondent violated KRPC 1.15(d).

"KRPC 8.4(d)

"19.     'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he repeatedly engaged in conduct which amounted to conflicts of interest with his clients. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

18

"American Bar Association
Standards for Imposing Lawyer Sanctions

"20.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"21.     *Duty Violated*.  The respondent violated his duty to his client to refrain from engaging in conflicts of interest.

"22.     *Mental State*.  The respondent knowingly violated his duty.

"23.     *Injury*.  As a result of the respondent's misconduct, the respondent caused actual injury to C.M.

"24.     *Aggravating and Mitigating Factors*.  Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present: [Footnote:  While the hearing panel is unable to find by clear and convincing evidence that the respondent was motivated by dishonesty and/or selfishness, the hearing panel is troubled by the respondent's motivation. The respondent attempted to obtain the results of a drug test of a client, in an unrelated matter, to use against his client. The hearing panel cannot fathom a good motivation for making such an attempt. Additionally, the respondent attended a hearing in *Febbo v. C.M.*, when he knew he had a conflict and had no legitimate reason for attending. The hearing panel is seriously troubled by the respondent's conduct.]

19

"25.     *Prior Disciplinary Offenses*.  The respondent has been previously disciplined on one occasion in the State of Missouri; in 2006, the respondent was informally admonished.

"26.     *Multiple Offenses*.  The respondent violated KRPC 1.7, KRPC 1.8, KRPC 1.9, KRPC 1.15(d), and KRPC 8.4. Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"27.     *Vulnerability of Victim*.  Because C.M. and L.F. were experiencing financial difficulties when they sought the assistance from the respondent, C.M. and L.F. were vulnerable to the respondent's misconduct.

"28.     *Substantial Experience in the Practice of Law*.  The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 2007. The Missouri Supreme Court admitted the respondent to the practice of law in 1975. At the time of the misconduct, the respondent has been practicing law for more than 35 years.

"29.     *Indifference to Making Restitution*.  To date, the respondent has not made restitution to his clients. Currently, a claim is pending before the Missouri Client Protection Fund to reimburse his clients for their loss.

"30.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"31.     *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.*  The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts that gave rise to the violations. Finally, the respondent admitted that he violated the Kansas Rules of Professional Conduct.

20

"32.     *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*.  The respondent presented four letters from friends and neighbors who spoke favorably of him.

"33.     *Imposition of Other Penalties or Sanctions*.  The respondent has experienced other sanctions for his conduct. The respondent's license to practice law in the State of Missouri was suspended indefinitely. The Missouri Supreme Court's order provided that the respondent would be permitted to apply for reinstatement after 1 year.

"34.     *Remoteness of Prior Offenses*.  The discipline imposed in 2006 is remote in character and in time to the misconduct in this case.

"35.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.32     Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

'4.33     Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.'

"*Recommendation*

"36.     The disciplinary administrator recommended that the respondent be suspended for a period of 1 year. The respondent recommended that the hearing panel immediately suspend the respondent from the practice of law. (It is worth noting here that the hearing panel is without the ability to effectuate the respondent's request. The hearing

panel is charged with making findings of fact, conclusions of law, and recommendations as to discipline to be imposed.) The respondent further recommended that he be reinstated to the practice of law in Kansas at the time Missouri Supreme Court reinstates the respondent to the practice in Missouri.

"37. In considering the appropriate discipline, the hearing panel has considered many factors. During the proceedings in Missouri, the respondent did not express remorse or regret or take responsibility for a majority of the misconduct. The Missouri disciplinary hearing panel commented as follows:

'22. For the most part, Respondent did not show remorse or express regret for his conduct. He continued to defend the loan transactions on the technical ground that he had no interest in KNP because he had transferred an ownership interest to his daughter, and continued to assert there was no substantial relationship between the Febbo and KNP representation and his representation of [C.M.]. He did express regret for having advanced medical costs to [C.M.].'

In the intervening time period, the respondent has come to understand the wrongful nature of his conduct. However, the respondent continued to fail to demonstrate remorse for C.M. and L.F. at the hearing on the formal complaint in Kansas.

"38. It is important for the hearing panel to note that the clients in this case are Kansas residents and the personal injury cases arose as a result of an accident which occurred in Kansas. Had the respondent filed litigation on behalf of L.F. and C.M., he would have filed it in Kansas. Because the misconduct related to Kansas clients and in representation in a Kansas matter, this is not simply a reciprocal discipline case. The respondent harmed Kansas clients. The hearing panel must consider what discipline is appropriate to recommend, independent of the discipline imposed in Missouri.

"39. Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for an indefinite period of time. Prior to reinstatement, the hearing panel

22

recommends that the respondent be required to establish that he has made restitution to C.M. and L.F. Additionally, the hearing panel recommends that the respondent be required to establish that he fully cooperated with the Missouri Client Protection Fund Commission and repaid the commission or his clients as directed. In the event the Kansas Client Protection Fund also initiates an investigation and prosecution, the hearing panel further recommends that the respondent be required to establish that he fully cooperated with the Kansas Client Protection Fund Commission and repaid the commission or his clients as directed. Finally, the respondent should establish that he provided C.M. and L.F. with a sincere apology for the misconduct and the harm it caused. If the respondent makes full restitution and forwards a sincere apology to C.M. and L.F., the hearing panel recommends that the respondent be allowed to apply for reinstatement after a period of 1 year suspension.

"40.     Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2015 Kan. Ct. R. Annot. 350). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of the hearing before the panel and the hearing before this court. The respondent did not file exceptions to the hearing panel's final hearing report.

23

As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c) and (d) (2015 Kan. Ct. R. Annot. 369).

The evidence before the hearing panel establishes by clear and convincing evidence the charged misconduct violated KRPC 1.7(a)(2) (2015 Kan. Ct. R. Annot. 519) (conflict of interest); 1.8(a) (2015 Kan. Ct. R. Annot. 530) (conflict of interest); 1.8(e) (2015 Kan. Ct. R. Annot. 530) (providing financial assistance to client); 1.9(a) (2015 Kan. Ct. R. Annot. 539) (duties to former clients); 1.15(d) (2015 Kan. Ct. R. Annot. 556) (preserving client funds); and 8.4(d) (2015 Kan. Ct. R. Annot. 672) (engaging in conduct prejudicial to the administration of justice), and it supports the panel's conclusions of law. We adopt the panel's conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. At the hearing before the panel, the office of the Disciplinary Administrator recommended that respondent be suspended from the practice of law in the state of Kansas for a period of 1 year. Respondent recommended the hearing panel immediately suspend him and that he be reinstated to the practice of law in Kansas at the time the Missouri Supreme Court reinstates him to the practice of law in Missouri. The hearing panel recommended suspension for an indefinite period of time no less than 1 year. Further, the hearing panel recommended that prior to reinstatement, respondent must establish that he has made restitution to C.M. and L.F.; that he has fully cooperated with the Missouri Bar Client Security Fund Committee; that, in the event the Kansas Client Protection Fund Commission initiates an investigation and prosecution, he establish he fully cooperated with the Kansas Client Protection Fund Commission and repaid the commission or his clients as directed; and that he provided C.M. and L.F. with a sincere apology for the misconduct and harm it caused.

After the panel hearing, on December 30, 2015, respondent filed with the Disciplinary Administrator's office a second answer which included an executed mutual total release and settlement agreement between C.M., L.F., and respondent dated February 22, 2012, which arose out of lawsuits filed in Platte County Missouri, *Lyle L. Odo, P.C. v.* [*C.M.*], No. 11AE-CV01722, and in Atchison County, Kansas, [*C.M.*] *v. Alan Cummings, et al.*, No. 2011 CV 123. The purpose of the release and settlement agreement was to "fully settle and compromise any and all claims, demands, liens or causes of action any one party to this Agreement may have against any other party or combination of parties to this Agreement." After reviewing the agreement, the Missouri Bar Board of Governors concluded that C.M.'s claim for compensation from the Missouri Bar Client Security Fund Committee "did not qualify for compensation under the rules which govern the Fund."

At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator recommended that respondent be suspended from the practice of law in the state of Kansas for a period of 1 year with respondent being automatically reinstated at the end of that year. Respondent requested that he be suspended in Kansas until such time as he is reinstated in Missouri.

We hold that respondent is to be suspended from the practice of law in the state of Kansas for a period of 1 year effective as of the date of the filing of this opinion. Before reinstatement is allowed, respondent shall comply with Kansas Supreme Court Rule 218 (2015 Kan. Ct. R. Annot. 401) and Rule 219 (2015 Kan. Ct. R. Annot. 403), including a required appearance before a hearing panel for a reinstatement hearing.

In its final hearing report, the panel recommended that respondent make full restitution to C.M. and L.F. However, the panel did not acknowledge the mutual total release and settlement agreement dated February 22, 2012. The court holds that when

25

future hearing panels make a recommendation of restitution, the panel must make a supportive factual finding and include such finding in its final hearing report.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Lyle Louis Odo be and is hereby disciplined by suspension from the practice of law in the state of Kansas for a period of 1 year, in accordance with Supreme Court Rule 203(a)(2) (2015 Kan. Ct. R. Annot. 293), as of the date of this order.

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 218 and Rule 219 before reinstatement is allowed.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.